**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

RIVERSIDE PAPER SUPPLY CO.,

Plaintiff,

v.

EPICOR SOFTWARE CORP.,

Defendant.

Case No. 4:26-cv-67

**OPINION & ORDER**

Before the Court is Plaintiff Riverside Paper Supply Co.'s motion to remand (ECF No. 14) and Defendant Epicor Software Corp.'s motion to dismiss and compel arbitration pursuant to Fed. R. Civ. P. 12(b)(3) (ECF No. 9). For the reasons set forth below, Riverside's motion will be denied, Epicor's motion will be granted, and this case will be dismissed.[1]

## I. BACKGROUND

Riverside and Epicor entered into a business contract on July 30, 2024. ECF No. 1-1 ¶ 10. That contract contains an arbitration agreement requiring "any dispute, claim, or controversy arising out of, relating to, or in connection with the [contract]" to be settled through arbitration, excluding "legal actions commenced as debt recovery purposes for amounts due hereunder, or actions for infringement or violation

[1] The Court has considered the arguments in the parties' briefing and concludes there is no need to hold a hearing on the motions. *See* Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J).

of a party's intellectual property rights." ECF No. 1-1 at 16. The arbitration agreement also requires that any possible arbitration be administered using the American Arbitration Association's Commercial Arbitration Rules ("AAA Rules"). *Id.* Those rules provide that "[t]he arbitrator shall have the power to rule on [their] own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement . . . without any need to refer such matters first to a court."[2]

After signing the contract and paying Epicor $64,713.21, Riverside alleges that Epicor provided commercially unacceptable software and services. ECF No. 1-1 ¶¶ 12–13. Riverside filed a complaint in Newport News Circuit Court on March 19, 2026, alleging two counts—breach of contract and fraud—and seeking $64,713.21 in damages. *Id.* ¶¶ 17–22. In its complaint, Riverside also requested that the court enter a judgment awarding it attorney fees and costs and voiding the July 30, 2024 contract. *Id.* ¶ 22. Epicor removed the case based on diversity jurisdiction and subsequently moved to dismiss under Rule 12(b)(3) and to compel arbitration, ECF Nos. 1, 9. Riverside moved to remand, arguing this Court lacks jurisdiction, ECF No. 14.

## II. LEGAL STANDARDS

### A. Remand

Federal courts have original jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs,

---

[2] *See Commercial Arbitration Rules and Mediation Procedures*, AM. ARB. ASS'N (2026), https://perma.cc/CV9Q-TV6Y.

and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). A defendant may remove a case from state court to federal court if the action could have originally been filed in federal court. 28 U.S.C. § 1441(a).

When a defendant removes a case to federal court based on diversity jurisdiction, as is the case here, "the sum demanded in good faith in the [plaintiff's] initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). However, a defendant need not necessarily accept what the plaintiff labels as the amount in controversy. They "may assert the amount in controversy if the [plaintiff's] initial pleading *seeks . . . nonmonetary relief*." § 1446(c)(2)(A)(i) (emphasis added). To sustain removal, a district court must conclude that a defendant's asserted amount in controversy is greater than $75,000 by a preponderance of the evidence. § 1446(c)(2)(B). While attorney fees usually cannot count towards that amount in controversy, they may do so when (1) those fees are provided for by contract or (2) if a statute mandates or permits their payment. *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (4th Cir. 2013) (citation omitted).

Courts will not grant motions to remand when a defendant satisfies the statutory requirements for removal, in part because orders to remand "[are] not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).

**B. Motions to Dismiss Under Fed. R. Civ. P. 12(b)(3)**

Under Rule 12(b)(3), a defendant seeking to compel arbitration can move to dismiss on the theory that arbitration agreements designate a particular venue—namely, an arbitral forum—and that litigation brought elsewhere is improper.

*See Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 593 n.2 (4th Cir. 2023). The Court can consider evidence outside the pleadings, including the arbitration agreement itself, when weighing a motion to dismiss under Rule 12(b)(3). *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365–66 (4th Cir. 2012).

Courts follow three steps before dismissing a case and compelling arbitration. First, they confirm that a valid arbitration agreement exists. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2). Second, they look for "clear and unmistakable" evidence that the parties intended to delegate arbitrability—the power to decide if a claim is subject to arbitration—to an arbitrator, not to the court. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up). If a court finds such evidence, then it will compel arbitration before it reaches the merits of the case. *See Henry Schein*, 586 U.S. at 69. Only if a court decides it should assess arbitrability will it reach the third step, which is to consider whether the claims are, in fact, arbitrable. At this point, a court must presume as much. *See Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) ("[W]hen the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.") (citation and quotation marks omitted); *see also Chorley Enters., Inc. v. Dickey's Barbeque Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (a court "will compel" arbitration when it determines issues fall within its scope).

## III. ANALYSIS

### A. Remand

Riverside argues that the case should be remanded to state court because the amount in controversy does not exceed $75,000, and therefore cannot support diversity jurisdiction. ECF No. 15 at 1.[3] The Court will deny Riverside's motion because Epicor has shown by a preponderance of the evidence that the amount in controversy exceeds that statutory threshold.

#### *i. The Complaint Seeks Monetary and Nonmonetary Relief*

Riverside alleges that the amount in controversy required to sustain federal diversity jurisdiction is not satisfied because its complaint only seeks $64,713.21. *See* ECF No. 1-1 ¶ 22. In support of that argument, Riverside claims that its complaint only initiated "a damages action[,]" ECF No. 15 at 2, and that because it only requested that the Court void the July 30, 2024 contract in its initial pleading's *prayer for relief*, not as a separate cause of action, it did not formally request nonmonetary relief that can contribute to the amount in controversy.[4] *See* ECF No. 17 at 3.

However, the Court is not bound by this narrow reading of Riverside's complaint. It can assess requests made in Riverside's prayer for relief when

[3] There is no dispute that the two parties are diverse and that, as a matter of satisfying the requirements of diversity jurisdiction, only the amount in controversy is at issue here.

[4] Riverside also reiterated its request that the Court declare the July 30, 2024 contract void elsewhere in its briefing. *See* ECF No. 15 at 2 ("Although the Complaint in this matter includes a third request for relief for the Court to declare the parties' contract void, the Complaint does not seek a declaratory judgment under Virginia Code § 8.01-184.").

considering what is ultimately at issue in this litigation. *See, e.g.*, *Martin v. Lagualt*, 315 F. Supp. 2d 811, 814 (E.D. Va. 2004) ("When evaluating the propriety of removal, the district court must determine the nature of the plaintiff's claims from the face of the complaint at the time the petition for removal was filed."); *West Neck Comm'y Ass'n, Inc. v. JBWK, LLC*, No. 2:22-cv-491, 2023 WL 3637078, at *4 (E.D. Va. Apr. 28, 2023) (determining that the plaintiff's claim for relief was not limited to monetary damages provided for in initial pleading and that a request for injunctive relief contained within the plaintiff's prayer for relief was "clearly an object of the litigation and therefore [] must be considered in the court's assessment of the amount in controversy"); *see also Morey v. Louis Vuitton N. Am., Inc.*, 461 Fed. App'x 642, 643 (9th Cir. 2011) (unpublished) ("When determining the amount in controversy for jurisdictional purposes, the amount claimed in the complaint's prayer for relief controls if apparently made in good faith.").

Therefore, the Court concludes that Riverside's complaint, by requesting relief to void the July 30, 2024 contract, should be construed to include a request for nonmonetary relief. As a result, Epicor may assert an amount in controversy and needs only to show by a preponderance of the evidence that it exceeds $75,000. *See* 28 U.S.C. § 1446(c)(2)(A)(i) and (B).[5]

[5] Riverside maintains that Epicor must prove to a "legal certainty" that the amount in controversy exceeds $75,000. *Lee v. Citimortgage, Inc.*, 739 F.Supp.2d 940, 945 (E.D. Va. 2010) (citation omitted). But that is only the case when a plaintiff merely claims monetary damages below $75,000, not when *both* monetary damages and nonmonetary relief are sought. *Id.* (citation omitted).

### *ii. Amount in Controversy Likely Exceeds $75,000*

#### *a. Value of the Litigation*

For complaints that seek nonmonetary relief, as Riverside's does, determining the amount in controversy requires measuring "the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *see also JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) (noting that amount in controversy should be based "not only [on] the amount of money damages [the plaintiff] requested but also the injunctive relief it sought"). This 'either party' approach to assessing the value of nonmonetary relief is whatever is the "larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." *Frashier*, 624 F.3d at 639; *see also Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) ("In this circuit, it is settled that the test for determining the amount in controversy in a diversity proceeding is the pecuniary result to either party which [a] judgment would produce.") (citation and quotation marks omitted).

Epicor argues that the costs it would incur as the result of an adverse ruling on the contract's validity far exceed $75,000. The contract required Riverside to pay $151,724.81 in professional fees over the life of the contract. *See* ECF No. 1 ¶ 20 (citing ECF No. 1-1 at 21). Epicor also points to an additional $451,011.40 in software as a service ("SaaS") fees broken up over five years that it was owed. *See* ECF No. 1 ¶¶ 22–23 (claiming that Riverside agreed to pay this sum in five annual installments).

Epicor is correct that these sums can contribute to the amount in controversy. When "a right to future payments . . . will be adjudged in the present suit," then those claims "are properly counted against the jurisdictional amount." *Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) (quotation marks and citation omitted). Epicor sufficiently demonstrated entitlement to payments from Riverside through evidence of the contract, thus the Court concludes that Epicor has shown, by a preponderance of the evidence, that more than $75,000 is at stake in this case.

*b. Attorney Fees*

Additionally, independent of the parties' contractual obligations, Epicor argues that reasonable attorney fees may count towards the amount in controversy and that those fees will exceed $10,286.80 here. *See* ECF No. 1 ¶¶ 28–30. The parties agree that the statute that applies to Riverside's breach of contract claim, Tex. Civ. Prac. & Rem. Code § 38.001, allows attorney fees to be included when determining the amount in controversy. *See Francis*, 709 F.3d at 368.[6]

[6] Riverside asserts that attorney fees cannot count towards the amount in controversy because the potential for recovery "is not universal to the entire action" since the fees are not recoverable on Riverside's fraud claim. ECF No. 15 at 4. But Riverside provides no legal authority for this "universal" requirement. And even if Riverside were to lose on its breach of contract claim—or later withdraw it entirely—the fact that they might not recover attorney fees does not deprive the Court of jurisdiction. *See McDonald v. Patton*, 240 F.2d 424, 425 (4th Cir. 1957) ("[I]t is indisputably the law that if the ultimate recovery is for less than the amount claimed, this is immaterial on the question of jurisdiction."); *see also Ministry of Def. of State of Kuwait v. Naffa*, 105 F.4th 154, 160 (4th Cir. 2024) (dismissal for lack of subject matter jurisdiction inappropriate when an amount in controversy is "at least facially plausible" regardless of whether it is actually awarded) (citation omitted).

Setting aside for the moment the Court's conclusion that the amount in controversy on the contract itself exceeds $75,000, attorney fees coupled with Riverside's requested monetary relief would only need to reach $10,286.80 for the amount in controversy to exceed $75,000. The Court has considered attorney fees in similar cases and used its "experience and common sense" to approximate that attorney fees here would likely exceed that threshold. *Francis*, 709 F.3d at 368 (citation and quotation marks omitted); *see also Banks v. City of Virginia Beach*, No. 2:24-cv-149, 2026 WL 500857, at *3 (E.D. Va. Feb. 23, 2026) ($350 an hour is a fair estimate of market rate for attorneys of similar experience); *Hair Club for Men, LLC v. Ehson*, No. 1:16-cv-236, 2017 WL 1250998, at *7 (E.D. Va. Apr. 3, 2017) (significant attorney fees despite case's "lack of complexity").

In sum, Epicor has shown, by a preponderance of the evidence, that the amount in controversy here exceeds $75,000. Therefore, the Court concludes that removal is appropriate and accordingly denies Riverside's motion to remand.

**B. Dismissal Under Rule 12(b)(3)**

Denial of remand, however, does not guarantee the case must stay here. Epicor moves to dismiss Counts I and II under Rule 12(b)(3) for improper venue and to compel arbitration. Riverside and Epicor agree at the first step that a valid arbitration agreement exists. *See* ECF No. 1-1 at 3–4; ECF No. 10 at 4. But on the second step, Epicor argues that agreement delegates arbitrability to an arbitrator, ECF No. 10 at 6, while Riverside claims that the parties intended to have the Court decide. *See* ECF No. 11 at 1. Because the Court finds that the parties clearly and

unmistakably intended to let an arbitrator determine arbitrability, it will grant Epicor's motion.

### *i. Delegating Arbitrability*

#### *a. Clear and Unmistakable Evidence of Intent*

To delegate arbitrability, parties must include language in their arbitration agreement that "tasks the arbitrator with determining whether a particular controversy is covered by the parties' agreement to arbitrate." *Modern Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 241 (4th Cir. 2025). Such intent must be "clear and unmistakable[.]" *First Options of Chi.,* 514 U.S. at 944 (cleaned up). There are two primary ways to show the parties' clear and unmistakable intent to delegate arbitrability.

First, parties can expressly give an arbitrator the specific authority to determine the applicability or validity of the contract, including over the arbitration agreement itself. *See Modern Perfection,* 126 F.4th at 242; *see also Novic v. Credit One Bank, Nat'l Ass'n*, 757 Fed. App'x 263, 265–66 (4th Cir. 2019) (unpublished). Broad grants of authority that do not specifically refer to an arbitrator's authority to decide the enforceability or validity of the agreement are insufficient. *Compare Carson v. Giant Food, Inc.*, 175 F.3d 325, 330 (4th Cir. 1999) (arbitrators lacked authority to determine arbitrability where unspecific clauses required "arbitration to resolve disputes 'regarding the terms of this Agreement' and 'concerning the interpretation of the provisions of this Agreement'") *with Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (providing that an arbitrator

"shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement"); *see also Modern Perfection*, 126 F.4th at 242 (collecting Fourth Circuit cases that find sufficiently clear delegations of arbitrability through contract language).

Second, parties show clear and unmistakable intent when they incorporate commercial arbitration rules into their agreement, because those rules often expressly state that an arbitrator can decide arbitrability. The Fourth Circuit has already held that incorporating JAMS Rules—one of the leading commercial arbitration rulesets—into arbitration agreements qualifies as clear and unmistakable evidence of the parties' intent to delegate. *See Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017). While the Fourth Circuit has not yet decided whether incorporating the AAA Rules reveals a similar intent,[7] several other circuits have. *See, e.g.*, *Fallo v. High-Tech. Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (AAA rules provide clear and unmistakable evidence of parties' intent to delegate arbitrability); *Terminix Int'l Co v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (same); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (same).

The Court concludes that Riverside and Epicor clearly and unmistakably delegated arbitrability through both ways described here. First, aside from the two

[7] The Fourth Circuit acknowledged this line of cases last year but did not discuss the issue at length because neither party raised it on appeal. *See Berkeley Co. Sch. Dist. v. Hub Int'l. Ltd.*, 130 F.4th 396, 403 (4th Cir. 2025) (leaving intact district court ruling that the adoption of AAA rules was clear and unmistakable evidence that parties intended to delegate arbitrability).

exclusions carved out in the contract, the parties agreed that "any dispute, claim, or controversy arising out of, relating to, or in connection with the Agreement (whether based in contract, in tort, upon a statutory provision, or otherwise), including, without limitation, the formation, performance, breach, termination, enforcement, interpretation or validity thereof" would be submitted to arbitration. *See* ECF 1-1 at 16. The breadth of this arbitration clause—and its specific assignment of authority to an arbitrator to assess the contract's enforcement, interpretation, and validity—closely resembles similar cases where courts found clear and unmistakable intent. *See Modern Perfection,* 126 F.4th at 242 (collecting cases).

Moreover, the parties agreed that the AAA Rules would be a mandatory part of any arbitration. ECF No. 1-1 at 16 (arbitration "*will* be . . . administered by AAA pursuant to its Commercial Arbitration Rules and Mediations Procedures") (emphasis added). And the AAA Rules in relevant part provide:

> The arbitrator shall have the power to rule on [their] own jurisdiction, *including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim*, without any need to refer such matters first to a court.[8]

(emphasis added). By adopting the AAA Rules, the parties incorporated guidelines into their agreement requiring an arbitrator to assess the arbitrability of any claim or counterclaim. *See, e.g.*, *Brenco Enters., Inc. v. Bitesquad.com, LLC*, 297 F. Supp. 3d 608, 612 (E.D. Va. 2018) (noting that an arbitration provision "incorporating the

[8] *See supra* n. 1.

AAA Commercial Rules . . . explicitly require[d] submission of arbitrability issues to the arbitrator”). The Court concludes that the decision to adopt the AAA Rules by two businesses provides strong evidence of a meeting of the minds and the parties’ clear and unmistakable intent to delegate arbitrability.

*b. Challenges to the Delegation Provision*

However, Riverside disputes that there is not sufficiently clear and unmistakable evidence of the parties’ intent to delegate, in part because the parties also agreed not to submit *all* claims and controversies to arbitration. *See* ECF No. 11 at 3.[9] But courts have rejected similar efforts to disguise attacks on an arbitration agreement’s scope as attacks on its delegation clause, because a party who objects to the scope of an arbitration agreement raises an inquiry that is wholly separate from who actually decides that scope. *Modern Perfection,* 126 F.4th at 242–43 (requiring that “a party seeking to evade a delegation clause’s application must assert—and ultimately prove—that there is some defect that render[s] *that provision* illegal or otherwise unenforceable”) (citation and quotation marks omitted) (emphasis in original). As a result, the objecting party must specifically “lodge[] a challenge against the delegation [clause].” *Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 291 (4th Cir. 2020). If it does so with “sufficient force and specificity,” only then must a

[9] The fact that Riverside and Epicor contemplated exceptions to their arbitration agreement says nothing about who they intended to assess its scope. Riverside fails to explain how the Court would assess arbitrability for issues related to the two exceptions to arbitration, but not for other issues. *See* ECF No. 11 at 3. This would, in practice, collapse steps two and three of the Court’s inquiry and run counter to the clear and unmistakable evidence of the parties’ intent to delegate found elsewhere in their contract.

court decide "whether the delegation provision is unenforceable upon such grounds as exist at law or in equity." *Id.* (citations and quotation marks omitted).

Successful challenges to delegation clauses explain why they, as individual provisions, are unenforceable. *See, e.g.*, *Gibbs*, 966 F.3d at 291 (delegation provision unenforceable because of prospective waiver doctrine); *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 453 (4th Cir. 2017) (delegation provision unenforceable because of preexisting insurance law); *Rent-A-Center*, 561 U.S. at 74 (delegation provision because of unconscionability).

Riverside has not done so here. First, Riverside's complaint raises no specific objection to the validity of the delegation clause itself. In fact, Riverside's only reference to arbitration is its belief that the action falls outside the scope of the arbitration agreement as a debt recovery action. *See* ECF No. 1-1 at 3–5. Second, while "a reference to the [delegation] provision in [an] opposition to a motion to compel arbitration" can suffice as a viable challenge, *Gibbs*, 966 F.3d at 291 (cleaned up), Riverside's opposition still fails to provide the requisite force and specificity needed to challenge the provision in its own right. Riverside argues that it would be "nonsensical" for an arbitrator to decide the arbitrability of issues that the parties excluded from the scope of arbitration. *See* ECF No. 11 at 3. But in the next paragraph, Riverside posits that "the parties might have intended for an arbitrator to decide the issue of arbitrability in those cases not excepted from arbitration under the agreement." *Id.* (quotation marks omitted). While such a proposal is unworkable,

it also falls short of the forceful, specific rebuke required to sustain a challenge to the arbitration agreement's delegation provision.[10]

Absent a valid objection to their arbitration agreement's delegation language, the Court concludes that Riverside and Epicor clearly and unmistakably intended to delegate arbitrability. As a result, the Court cannot reach the merits of Riverside's claims and must compel arbitration. *See Henry Schein*, 586 U.S. at 69.

### *ii. Arbitrability of The Parties' Dispute*

Even if the Court could reach the merits of Riverside's claims, it would still compel arbitration. The Court assumes that disputes are arbitrable "unless it may be said with positive assurance" that there is no interpretation that would command that result. *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). Moreover, the Court is not bound to the legal labels that parties affix to a dispute and must independently assesses whether an issue falls within an arbitration agreement's scope. *See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1998).

Riverside alleges that their claims are not within the scope of the arbitration agreement, which in relevant part excludes "legal actions commenced as debt recovery purposes for amounts due hereunder" from arbitration. *See* ECF No. 1-1 at 16. Riverside asserts that once Epicor breached the July 30, 2024 contract, Epicor

[10] Even if the Court were to decide otherwise, for Riverside to successfully attack the delegation provision on this basis, there would still need to be some reason why the delegation provision is unenforceable at law or equity. *See Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 291 (4th Cir. 2020) (citation omitted). Riverside does not allege any such reason in its complaint or through briefing.

became liable to repay the sum Riverside previously paid. ECF No. 11 at 3. Riverside alleges this sum is a "debt" and that, by seeking to recover it, this case falls within one of the two agreed upon exceptions to the parties' arbitration agreement. *Id.*

The Court disagrees for two reasons. First, Riverside fails to show why the damages it seeks qualify as a "debt . . . due hereunder." ECF No. 1-1 at 16. A "debt" is "a specific sum of money due by agreement or otherwise." *See* Debt*, Black's Law Dictionary* (12th ed. 2024). A debt due "hereunder" would require that debt to be due as provided for "later in this document", or "in accordance with this document." *See* Hereunder, *Black's Law Dictionary* (12th ed. 2024). In a similar scenario involving an arbitration agreement that excluded "actions for collections of moneys owed[,]" the Fourth Circuit held that the relevant inquiry is whether the money being sought "is part of the contract itself, not a remedy for either party's deviation from the contract." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709, 712 (4th Cir. 2001). Any amount not a "sum certain" under the contract does not suffice. *Id.* at 712. Here, the damages that Riverside seeks do not appear as a specific, fixed sum in the July 30, 2024 contract. In fact, Riverside's own complaint characterizes the $64,713.21 as the damages it suffered because of the breach, or in essence, from Epicor's "deviation from the contract." *Id.*

Second, Riverside's own descriptions of this litigation suggest that these actions fall within the scope of the arbitration agreement, even if it tries to characterize them otherwise. The parties' arbitration agreement expressly requires that disputes related to the breach of the contract be submitted to arbitration. *See*

ECF No. 1-1 at 16 (submitting "any dispute, claim, or controversy arising out of, relating to, or in connection with the Agreement . . . including, without limitation, the formation, performance, *breach*, termination, enforcement, interpretation, or validity thereof" to arbitration) (emphasis added). Indeed, Riverside's classification of this case as a debt recovery action explains that it is the result of "a breach of the terms of the Master Agreement," and one of the two counts in Riverside's complaint is for breach of contract. ECF No. 1-1 at 4–5. Issues are arbitrable "unless it may be said with positive assurance" that no interpretation can support it. *AT&T Techs.*, 475 U.S. at 650 (citation omitted). That high bar is not met here.

Riverside also fails to show why its second cause of action for fraud would qualify as a debt recovery action or fall outside the scope of the parties' arbitration agreement. Riverside alleges that Epicor misrepresented facts to induce it into signing the contract and making payments. ECF No. 1-1 at 4. But Riverside's allegations of fraud pertain to the contract *as a whole*, not to the arbitration agreement itself, so even its claim of fraudulent inducement falls within the scope of arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967) ("[W]here no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud.").

## IV. CONCLUSION

Riverside's motion to remand (ECF No. 14) is **DENIED**, Epicor's motion to dismiss and compel arbitration (ECF No. 9) is **GRANTED**, and this action is **DISMISSED**.[11]

**IT IS SO ORDERED.**

/s/ JKW

Jamar K. Walker
United States District Judge

Norfolk, Virginia
October 7, 2026

[11] The Court declines to stay the suit pending arbitration. When a court concludes that a dispute is arbitrable, it "does not have discretion to dismiss the suit" when "a party has requested a stay of the court proceeding pending arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). But that "says nothing about what happens when the *appealing party* never requests a stay." *Modern Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 244 (4th Cir. 2025) (emphasis added). That is the case here, because Riverside has not requested a stay anywhere in its briefing. Therefore, dismissal is appropriate.